IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-834

Filed: 20 March 2018

New Hanover County, Nos. 15 JT 314, 143, 144
IN THE MATTER OF: A.A.S., A.A.A.T., J.A.W.

Appeal by Respondents from order entered 25 April 2017, and appeal by Respondent-Mother from order entered 2 August 2016, by Judge J.H. Corpening, II, in District Court, New Hanover County. Heard in the Court of Appeals 19 February 2018.

> *Rebekah W. Davis for Respondent-Appellant Mother.*
>
> *Peter Wood for Respondent-Appellant Father.*
>
> *Jennifer G. Cooke for Petitioner-Appellee New Hanover County Department of Social Services.*
>
> *Parker Poe Adams & Bernstein LLP, by Catherine R.L. Lawson, for Guardian ad Litem.*

McGEE, Chief Judge.

Respondent-Mother and Respondent-Father (together, "Respondents") appeal from order entered 25 April 2017 terminating their parental rights as to their minor children A.A.S., A.A.A.T., and J.A.W. (together, "the children"). Respondent-Mother also appeals the trial court's permanency planning order entered 2 August 2016 requiring concurrent plans of adoption and reunification. Respondent-Father's appeal relates only to A.A.S. and A.A.A.T., as he is not the biological father of J.A.W.

J.A.W.'s purported father has failed to submit to a paternity test or respond to contact from the parties. He is not a party in this action.

Respondent-Father's appellate counsel filed a no-merit brief, pursuant N.C. R. App. P. 3.1(d) following a stated thorough review of the record. Counsel demonstrated he informed Respondent-Father of his right to personally file a brief within thirty days. Counsel asks this Court to conduct an independent review of the record for possible error. Respondent-Father has failed to file his own written arguments.

## I.    Factual and Procedural Background

Respondents moved to North Carolina in June 2015 when A.A.A.T. was about eight months old and J.A.W. was about three years old. A.A.S. had not yet been born. After moving to North Carolina, the family was homeless for around two weeks and resided in a Salvation Army shelter ("the shelter"). While at the shelter, Respondent-Father was observed shaking A.A.A.T. on 3 June 2015. Soon thereafter, Respondent-Mother was seen hitting J.A.W. on the head and dragging him by his shirt. As a result of a domestic violence incident between Respondents, the family was discharged from the shelter. The New Hanover County Department of Social Services ("DSS") filed a neglect and dependency petition on 10 June 2015 and assumed non-secure custody of A.A.A.T. and J.A.W.

Respondents were required to complete Comprehensive Clinical Assessments and to participate in parenting classes. Respondent-Mother completed the assessment on 2 July 2015 and was diagnosed with "major depressive disorder,

recurrent moderate." The assessment recommended that Respondent-Mother undergo a psychological evaluation and continue parenting classes. The psychological evaluation was completed on 7 October 2015 and found that Respondent-Mother had an IQ of 57, which "places her below the 1st percentile . . . and is described as extremely low intelligence." The psychological evaluation recommended that, after parenting classes, Respondent-Mother receive follow-up, one-on-one instruction in a therapy setting. Finally, the psychological evaluation noted that Respondent-Mother's level of intellectual functioning "will necessarily slow the rate and degree of adaptive change that can occur" and that "regular contact and consistent support is essential."

Respondent-Father completed his Comprehensive Clinical Assessment on 10 September 2015 and received a psychological evaluation on 21 October 2015. The evaluation found that Respondent-Father was "extremely low functioning" and "struggled on a measure of common sense, judgment and moral reasoning." The psychologist noted that "the combination of two individuals with limited cognitive abilities may be problematic, especially when tasks arise that are complex and/or require the input/contributions from both parents."

A.A.S. was born to Respondents on 30 December 2015. DSS filed a Juvenile Petition on 31 December 2015 alleging neglect due to the lack of progress made by Respondents in a prior case and the continued injurious environment. DSS was

awarded non-secure custody of A.A.S. and she was adjudicated a neglected juvenile on 10 February 2016.

A permanency planning hearing involving all three children was held on 14 July 2016 and the trial court entered an order on 2 August 2016 ("the 2 August 2016 order"). The 2 August 2016 order found that both DSS and the guardian ad litem recommended a primary plan of adoption with a concurrent plan of reunification. The trial court made numerous findings of fact supporting a plan of adoption, including that Respondent-Mother had ignored the medical needs of the children, was not financially stable, was not cooperative in following her case plan, had continually tested positive for drugs, and that her parenting skills had not sufficiently improved. As a result, the trial court ordered that the permanent plan would be adoption with a concurrent plan of reunification and that DSS should proceed with a termination of parental rights action.

A subsequent permanency planning hearing was held on 15 December 2016 and an order was filed on 4 January 2017 ("the 4 January 2017 order"). This order maintained the prior custody arrangement and noted that DSS had made reasonable and appropriate efforts to implement the permanent plan.

DSS filed a Petition to Terminate Parental Rights of Respondents on 15 August 2016. DSS alleged in the petition that there were sufficient facts to warrant a determination that grounds existed for the termination of parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2), (5), (6), and (7) (2015), and hearings were held

on 19 January 2017 and 24 February 2017 ("the termination hearings"). The trial court entered an order terminating Respondents' parental rights on 25 April 2017 ("the 25 April 2017 order").

## II. Analysis

### A. Respondent-Father's Appeal

Counsel for Respondent-Father filed a no-merit brief on his behalf, pursuant to N.C. R. App. P. 3.1(d), stating "[t]he undersigned counsel has made a conscientious and thorough review of the [r]ecord on [a]ppeal . . . . Counsel has concluded that there is no issue of merit on which to base an argument for relief and that this appeal would be frivolous." Counsel asks this Court to "[r]eview the case to determine whether counsel overlooked a valid issue that requires reversal." Additionally, counsel demonstrated that he advised Respondent-Father of his right to file written arguments with this Court and provided him with the information necessary to do so. Respondent-Father failed to file his own written arguments.

Consistent with the requirements of Rule 3.1(d), counsel directs our attention to two issues: (1) whether the trial court erred in concluding that grounds existed to terminate Respondent-Father's parental rights and (2) whether the trial court abused its discretion in determining that it was in the children's best interests to terminate Respondent-Father's parental rights. However, counsel acknowledges he cannot make a non-frivolous argument that no grounds existed sufficient to terminate

Respondent-Father's parental rights or that it was not in the children's best interests to terminate his parental rights.

We do not find any possible error by the trial court. The 25 April 2017 order includes sufficient findings of fact, supported by clear, cogent, and convincing evidence to conclude that at least one statutory ground for termination existed under N.C.G.S. § 7B-1111(a)(1). *See In re Taylor*, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). Moreover, the trial court made appropriate findings on each of the relevant dispositional factors and did not abuse its discretion in assessing the children's best interests. N.C. Gen. Stat. § 7B-1110(a) (2015). *See In re S.R.*, 207 N.C. App. 102, 109-10, 698 S.E.2d 535, 541 (2010). Accordingly, we affirm the trial court's order as to the termination of Respondent-Father's parental rights.

*B. Respondent-Mother's Appeal — Cessation of Reunification Efforts*

Respondent-Mother first argues that the trial court failed to make essential findings after it "implicitly eliminated reunification as a permanent plan and ceased reunification efforts" in the 2 August 2016 order. N.C. Gen. Stat. § 7B-906.2(b) (2015) requires that at a permanency planning hearing, a trial court must adopt concurrent permanent plans and identify a primary and secondary plan. Reunification must remain one of the identified plans unless the trial court "made findings under [N.C. Gen. Stat. § 7B-901(c) (2015)] or makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety." N.C.G.S. § 7B-906.2(b). While reunification remained one of the two

permanent plans, Respondent-Mother argues that it is self-contradictory to commence termination of parental rights and continue to work towards reunification. Respondent-Mother argues that the court, therefore, implicitly eliminated reunification as a concurrent permanent plan without making the necessary findings of fact.

DSS argues that Respondent-Mother is not entitled to an appeal of the 2 August 2016 order because it does not meet the criteria in N.C. Gen. Stat. § 7B-1001(a) (2015). Only the following final orders may be appealed to this Court in abuse, neglect, and dependency cases, pursuant to N.C.G.S. § 7B-1001(a):

> (1) Any order finding absence of jurisdiction.
>
> (2) Any order, including the involuntary dismissal of a petition, which in effect determines the action and prevents a judgment from which appeal might be taken.
>
> (3) Any initial order of disposition and the adjudication order upon which it is based.
>
> (4) Any order, other than a nonsecure custody order, that changes legal custody of a juvenile.
>
> (5) An order entered under G.S. 7B-906.2(b) with rights to appeal properly preserved, as follows:
>
>> a. The Court of Appeals shall review the order eliminating reunification as a permanent plan together with an appeal of the termination of parental rights order if all of the following apply:
>>
>>> 1. A motion or petition to terminate the parent's rights is heard and granted.

2. The order terminating parental rights is appealed in a proper and timely manner.

3. The order eliminating reunification as a permanent plan is identified as an issue in the record on appeal of the termination of parental rights.

b. A party who is a parent shall have the right to appeal the order if no termination of parental rights petition or motion is filed within 180 days of the order.

c. A party who is a custodian or guardian shall have the right to immediately appeal the order.

(6) Any order that terminates parental rights or denies a petition or motion to terminate parental rights.

DSS argues that because reunification remained a concurrent plan, the 2 August 2016 order failed to meet the criteria for appeal set forth in N.C.G.S. § 1001(a). We agree.

This Court has previously held that "where a trial court failed to make any findings regarding reasonable efforts at reunification, the trial court's directive to DSS to file a petition to terminate [a parent's] parental rights implicitly also directed DSS to cease reasonable efforts at reunification." *In re A.E.C.*, 239 N.C. App. 36, 42, 768 S.E. 166, 170 (2015) (citing *In re A.P.W.*, 225 N.C. App. 534, 741 S.E.2d 388, *disc. review denied,* 367 N.C. 215, 747 S.E.2d 251 (2013)). However, *In re A.E.C.* and the other cases cited by Respondent-Mother were decided prior to 1 October 2015, when

N.C. Gen. Stat. § 7B-906.2 was enacted. *See* N.C. Sess. Law 136 (2015). N.C.G.S. § 7B-906.2(a) requires the trial court to:

> [A]dopt one *or more* of the following permanent plans the court finds is in the juvenile's best interest:
>
> (1) Reunification as defined by G.S. 7B-101.
>
> (2) Adoption under Article 3 of Chapter 48 of the General Statutes.
> . . .
>
> (6) Reinstatement of parental rights pursuant to G.S. 7B-1114.

N.C.G.S. § 7B-906.2(a) (2015) (emphasis added). N.C.G.S. § 7B-906.2(b) continues by requiring the trial court to order "the county department of social services to make efforts toward finalizing the primary and secondary permanent plans . . . ."

At the permanency planning hearing, Respondents and the trial court discussed that efforts towards reunification would continue. During closing arguments, Respondent-Father's trial counsel argued: "And we also request that reunification[,] with perhaps the concurrent plan of adoption[,] but that [reunification remain] a primary or at least a 51% plan and that they be afforded more time." The trial court acknowledged when setting a permanent plan of adoption with a concurrent plan of reunification that:

> The significance to that change is that services remain in place. The change of law that has a concurrent plan. So because reunification is still part of the plan, services still in place, counseling is still in place . . . . And because it's not over until it's over. And it's not over yet.

- 9 -

The text of N.C.G.S. § 7B-906.2 clearly contemplates the use of multiple, concurrent plans including reunification and adoption. During concurrent planning, DSS is required to continue making reasonable reunification efforts until reunification is eliminated as a permanent plan. N.C.G.S. § 7B-906.2(b). Under the new statutory framework of concurrent planning, the 2 August 2016 order did not explicitly or implicitly eliminate reunification as a permanent plan. As a result, the 2 August 2016 order failed to meet the requirements for appeal under N.C.G.S. § 7B-1001(a) and we are unable to review Respondent-Mother's first two arguments on appeal as they relate only to the 2 August 2016 order. *See In re B.N.H.*, 170 N.C. App. 157, 611 S.E.2d 888 (2005).

## C. Grounds for Termination

Respondent-Mother's final two arguments are that the 25 April 2017 order did not establish grounds to terminate her parental rights under N.C.G.S. § 7B-1111(a). Under N.C.G.S. § 7B-1111(a), only a single ground is required to support the termination of parental rights. *In re P.L.P.*, 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005), *aff'd per curiam*, 360 N.C. 360, 625 S.E.2d 779 (2006).

### 1. Standard of Review

Termination of parental rights proceedings are conducted in two stages: adjudication and disposition. *In re A.B.*, 239 N.C. App. 157, 160, 768 S.E.2d 573, 575 (2015) (citing *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984)). "In

- 10 -

the adjudication stage, the trial court must determine whether there exists one or more grounds for termination of parental rights under N.C. Gen.[ ]Stat. § 7B–1111(a)." *In re D.H.*, 232 N.C. App. 217, 219, 753 S.E.2d 732, 734 (2014). A trial court's conclusions in the adjudication stage are reviewed to determine whether clear, cogent, and convincing evidence exists to support the court's findings of fact, and whether the findings of fact support the court's conclusions of law. *In re A.B.*, 239 N.C. App. at 160, 768 S.E.2d 575. Findings of fact supported by ample and competent evidence are binding on appeal; however, the trial court's conclusions of law are reviewed *de novo. Id.* This standard of review applies to Respondent-Mother's final two arguments.

2. N.C. Gen. Stat. § 7B-1111(a)(2)

Respondent-Mother's third argument is that the 25 April 2017 order did not establish grounds to terminate her parental rights as to A.A.A.T. and J.A.W. under N.C.G.S. § 7B-1111(a)(2) because the evidence and the findings of fact did not show willfulness and she had made "reasonable progress." Under N.C.G.S. § 7B-1111(a)(2) a trial court may terminate parental rights upon finding: (1) a child has been willfully left by the parent in foster care or placement outside of the home for over twelve months, and (2) the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child. *See In re O.C.*, 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396 (2005).

A finding of willfulness does not require a showing of fault

by the parent. Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort. A finding of willfulness is not precluded even if the respondent has made some efforts to regain custody of the children.

*Id.* at 465, 615 S.E.2d at 396 (internal citations omitted) (internal quotation marks omitted).

When the 25 April 2017 order was entered, A.A.A.T. and J.A.W. had been in nonsecure custody for twenty-one months. The guardian ad litem reported Respondent-Mother had missed several visitations, complained of having to "put on a show" for DSS, and displayed "lack of skill" when dealing with A.A.A.T. The guardian ad litem concluded that "there has been no significant progression in parenting skills observed[.]" In addition, Respondent-Mother tested positive for marijuana on the majority of her drug screens, failed to submit samples for drug testing several times, and submitted a diluted sample. Respondent-Mother's therapist testified that "when [Respondent-Mother] showed up, she did participate; however, I could never – I never knew when she would be there."

Respondent-Mother argues that "the court did not have the evidence it needed in order to conclude that the mother's behavior was willful or that her progress was not reasonable" because she "did not have the benefit of reasonable efforts at reunification." "Reasonable efforts" is defined as "[t]he diligent use of preventive or reunification services by a department of social services when a juvenile's remaining

at home or returning home is consistent with achieving a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-101(18) (2015).

Trial courts are required to make written findings of fact as to whether the department of social services made reasonable efforts towards reunification at permanency planning hearings. N.C.G.S. § 7B-906.2. However, no such findings of fact are required in orders terminating parental rights. Nevertheless, there is ample evidence in the record showing that DSS used reasonable efforts towards reunification. *See In re Rholetter*, 162 N.C. App. 653, 662, 592 S.E.2d 237, 242-43 (2004). Social workers from DSS testified at the termination hearings that they: (1) created and implemented case plans for Respondents, (2) provided bus passes to Respondents, (3) organized and supervised visitation between Respondents and the children, and (4) arranged for drug screens of Respondents. Our General Assembly requires social service agencies to undertake reasonable, not exhaustive, efforts towards reunification. Because DSS made reasonable efforts towards reunification, Respondent-Mother's argument that "the court did not have the evidence it needed in order to conclude that [her] behavior was willful or that her progress was not reasonable" is unavailing.

The 25 April 2017 order contained the following findings of fact related to the willfulness finding:

> 20. The Respondent-Parents failed to demonstrate their ability to engage in safe and appropriate visitation on multiple occasions. At times, visits would go well, and

Respondent-Parents were able to apply things learned in their parenting classes. However, progress was short lived.

. . .

23. That Respondents have not complied with their respective Family Services Case Plans or the Adjudication and Disposition Order and subsequent Orders of the Court in a consistent and adequate manner so as to justify reunification of the children with them and are engaged in ongoing neglect. . . .

24. The Respondents have willfully, and not due solely to poverty, left [J.A.W. and A.A.A.T.] in placement outside the home for more than twelve months without showing to the satisfaction of the court that reasonable progress under the circumstances was made in correcting those conditions which led to the children's removal, in that: The children were removed from Respondents on June 10, 2015 and have resided in out of home placement since removal. In that time period, Respondents have not made sufficient progress to enable the safe granting of unsupervised visitation, trial home placement or reunification by the Court in the period prior to the filing of this petition as detailed in the preceding Findings of Fact in this Order.

Under these facts, despite Respondents' "sporadic efforts," there was clear, cogent, and convincing evidence to support the trial court's findings that Respondents willfully left A.A.A.T. and J.A.W. in foster care for more than twelve months and had failed to make reasonable progress under N.C.G.S. § 7B-1111(a)(2). *See In re Nolen*, 117 N.C. App. 693, 700, 453 S.E.2d 220, 224-25 (1995) ("Extremely limited progress is not reasonable progress"); *In re B.S.D.S.*, 163 N.C. App. 540, 545-46, 594 S.E.2d 89, 92-94. These findings were sufficient to support the trial court's termination of Respondents' parental rights with respect to A.A.A.T. and J.A.W.

3.  N.C. Gen. Stat. §§ 7B-1111(a)(1) and (6)

Respondent-Mother's final argument on appeal is that the trial court failed to establish grounds necessary to terminate her parental rights as to A.A.S., A.A.A.T., and J.A.W. under N.C.G.S. § 7B-1111(a)(1) and (6).  As discussed above, there were sufficient grounds to terminate Respondent-Mother's parental rights as to A.A.A.T. and J.A.W. under N.C.G.S. § 7B-1111(a)(2).  Here, we discuss whether there were adequate grounds to terminate Respondent-Mother's parental rights as to A.A.S. N.C.G.S. § 7B-1111(a)(1) provides for the termination of parental rights upon finding "[t]he parent has . . . neglected the juvenile."  A neglected juvenile is one "who does not receive proper care, supervision, or discipline from the juvenile's parent[.]"  N.C. Gen. Stat. § 7B-101(15) (2015).  "A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding."  *In re Young*, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997).

At the time of the termination hearings, A.A.S. had not been in Respondent-Mother's custody for about thirteen months.  "Where, as here, a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, the trial court must employ a different kind of analysis to determine whether the evidence supports a finding of neglect."  *In re Shermer*, 156 N.C. App. 281, 286, 576 S.E.2d 403, 407 (2003).  In cases such as this, parental rights may be terminated upon "evidence of changed conditions in light of the history of neglect by the parent,

and the probability of a repetition of neglect." *In re Pierce*, 146 N.C. App. 641, 651, 554 S.E.2d 25, 31 (2001) (citing *In re Ballard*, 311 N.C. 708, 319 S.E.2d 227 (1984)).

A.A.S. was originally adjudicated a neglected juvenile on 10 February 2016. In that order, Respondents and DSS stipulated that A.A.S. was a neglected juvenile. Specifically, that order found that A.A.S. did not "receive proper care, supervision, or discipline," and that she "live[d] in an environment injurious to [her] welfare." The court pointed to "reasons of domestic violence, parenting issues, mental health issues, and stability" to support that finding.

Having established a history of prior neglect, the trial court was required to establish "by clear and convincing evidence a probability of repetition of neglect if [A.A.S.] were returned to [her] parents." *In re Reyes*, 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000). Trial courts may point to a parent's "present inability to parent" or "failure to provide a living environment suitable" for children to support a probability of repeated neglect. *In re White*, 81 N.C. App. 82, 90, 344 S.E.2d 36, 41 (1986). In this case, a DSS social worker testified that "the visitations were horrible in a way I've never experienced," and that Respondents were unable to perform simple parenting tasks such as changing a diaper. Another social worker testified that Respondent-Mother was seen "jerking" the children.

In the 25 April 2017 order, the trial court made the following findings of fact with respect to the likelihood of repetition of neglect:

> 13. . . . Respondents need an additional support person to

assist them in parenting safely. Without adequate support the Respondent-Parents . . . are incapable of parenting [the children]. The Respondent-Parents have been unable to identify suitable relative or community supports to provide such support.

15. . . . [Respondent-Mother's] monthly expenses require supplemental income, and she consistently reported to [DSS] her need to work in order to maintain her household. She currently lacks transportation and relies on bus transportation. She is currently unemployed. . . . [Respondent-Mother] has failed to maintain consistent employment. . . . As of January 2016, [DSS] began requesting random drug screens once per month. Each random drug screen was positive for marijuana up to June 2016. On May 17, 2016, she submitted to a random drug screen with diluted results. . . .

20. The Respondent-Parents failed to demonstrate their ability to engage in safe and appropriate visitation on multiple occasions. . . . [DSS] has consistently intervened during scheduled visitations due to yelling, inappropriate discipline and other immediate safety concerns. . . . [Respondent-Mother] continually said, "no one was going to tell her what to do" during her visits. . . . [Respondent-Mother] acknowledges pulling [the children] by the arm during scheduled visitation, but she does not feel that such contact is inappropriate since it is not her intent to hurt [the children].

23. That Respondents have not complied with their respective Family Services Case Plans or the Adjudication and Disposition Order and subsequent Orders of the Court in a consistent and adequate manner so as to justify reunification of the children with them and are engaged in ongoing neglect. In the event that legal custody were restored to them, there would be the likelihood of repetition of neglect. . . . [Respondent-Mother] neglected [the children] by her lengthy history of instability, mental illness, cognitive limitations, and her failure to adequately address any of these issues during the time her children

> have been in the legal custody of [DSS]. . . . Sufficient improvements in parenting have not been made in order to justify safe placement with a parent.

Respondent-Mother argues that the above findings of fact were not supported by the evidence because she was not offered adequate reunification services that were appropriate to her needs. As addressed above, the efforts of DSS were reasonable in this case.

There was competent evidence to support the trial court's findings and the findings were sufficient for the trial court to determine that A.A.S. was a neglected juvenile and that there was a likelihood of repeated neglect. *In re D.M.W.*, 173 N.C. App. 679, 688-89, 619 S.E.2d 910, 917 (2005)*, rev'd per curiam per the dissent,* 360 N.C. 583, 635 S.E.2d 50 (2006) (finding a parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect). Since we find that termination was proper on this ground, we need not address Respondent-Mother's argument that termination was improper under N.C.G.S. § 7B-1111(a)(6).

The trial court's order terminating Respondents' parental rights as to A.A.S., A.A.A.T., and J.A.W. is affirmed.

AFFIRMED.

Judge BRYANT concurs.

Judge MURPHY concurs as to Respondent-Father and concurs in the result only without separate opinion as to Respondent-Mother.