An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-437

Filed 15 October 2025

Rutherford County, Nos. 17JA000059-800, 17JA000060-800

IN THE MATTER OF: K.S., T.S.

Appeal by Respondent-Mother from orders entered 17 and 18 January 2024 by Judge Robert K. Martelle in Rutherford County District Court. Heard in the Court of Appeals 9 October 2024.

> *Law Office of Jason R. Page, PLLC, by Jason R. Page, for Respondent-Appellant-Mother.*
>
> *Administrative Office of the Courts, by Brittany T. McKinney, for the Guardian ad Litem.*
>
> *Hanna Honeycutt Frost for Petitioner-Appellee Rutherford County Department of Health and Human Services.*

CARPENTER, Judge.

Respondent-Mother appeals from the trial court's 17 and 18 January 2024 permanency-planning orders (the "2024 Orders") granting guardianship of K.S. ("Karen") and T.S. ("Tim") (collectively, the "Juveniles")[1] to Paternal Grandmother and suspending Respondent-Mother's visitation with Tim. On appeal, Respondent-

---

[1] Pseudonyms are used to protect the identities of the juveniles and for ease of reading. *See* N.C. R. App. P. 42(b).

Mother argues the trial court: (1) lacked subject-matter jurisdiction; (2) failed to make, or did not adequately make, certain required findings; and (3) abused its discretion by temporarily suspending Respondent-Mother's visitation with Tim. After careful review, we affirm the 2024 Orders.

## I. Factual & Procedural Background

Respondent-Mother and Father, who is not a party to this appeal, are the biological parents of Karen, born November 2007, and Tim, born April 2013. On 7 April 2017, the Rutherford County Department of Social Services ("DSS") filed juvenile petitions alleging the Juveniles were neglected. Prior to filing the petitions, DSS received reports that Respondent-Mother and Father abused substances and engaged in acts of domestic violence. The trial court granted DSS non-secure custody of the Juveniles. Thereafter, DSS filed amended juvenile petitions alleging that Tim, who tested positive for methamphetamine in his hair and on his clothes, was an abused and neglected juvenile.

On 29 June 2017, the trial court conducted adjudication and disposition hearings. On 26 October 2017, the trial court entered adjudication and disposition orders, concluding Karen was a neglected juvenile and Tim was an abused and neglected juvenile. The trial court entered a permanent plan of reunification and ordered Respondent-Mother to: (1) complete a substance abuse and mental health assessment and follow all recommendations from the assessment; (2) submit to random drug screens; (3) complete domestic violence services; (4) maintain stable

employment, housing, transportation, and demonstrate an ability to provide for the basic needs of the Juveniles; (5) maintain a stable and drug free environment for the Juveniles; and (6) exercise appropriate visitation with the Juveniles.

Beginning on 14 September 2017, the trial court conducted several permanency-planning hearings. On 30 November 2018, following the fourth permanency-planning hearing, the trial court prepared two permanency-planning orders (the "2018 Orders"). The 2018 Orders included proposed findings reflecting that Respondent-Mother "achieved the desired results of her case plan" and "[t]hat the best plan of care to achieve a safe, permanent home is for the [Juveniles] to be returned to the custody of [Respondent-Mother]." The 2018 Orders were file-stamped but were not signed by the presiding judge, District Court Judge C. Randy Pool. Thereafter, the Juveniles were returned to Respondent-Mother's custody.

Nearly five years later, on 10 April 2023, Paternal Grandmother filed a Chapter 50 custody complaint against Respondent-Mother and Father seeking emergency, temporary, and permanent custody of the Juveniles. By this time, Judge Pool no longer served as a district court judge. In her complaint, Paternal Grandmother alleged that the Juveniles had been residing in Paternal Grandmother's home since 10 February 2023 when Respondent-Mother was evicted from her residence for failure to pay rent.[2] Paternal Grandmother further alleged

---

[2] Paternal Grandmother's complaint contains an inconsistency as to the year the Juveniles began residing with Paternal Grandmother. The record is clear that 2023 is the correct year.

that Respondent-Mother's "condition has steadily decreased over the past two years." Specifically, Paternal Grandmother stated Respondent-Mother: started using drugs again; used drugs in the home she shared with the Juveniles; allowed drug addicts and drug abusers into the home; exposed the Juveniles to drug use; and allowed fentanyl to be delivered to the home. That same day, the trial court entered an ex parte order granting Paternal Grandmother temporary custody of the Juveniles. By this time, Respondent-Mother had relocated to Florida.

On 3 August 2023, after becoming aware of the underlying juvenile proceedings and the status of the 2018 Orders, Paternal Grandmother filed a Chapter 7B motion to intervene, or in the alternative, a motion for review of the 2018 Orders. That same day, Paternal Grandmother filed a motion to consolidate and a motion to stay the proceedings, or in the alternative, terminate juvenile jurisdiction.

On 8 August 2023, the trial court conducted a pretrial hearing and considered Paternal Grandmother's motions. On 24 August 2023, the trial court entered two pretrial orders (the "Pretrial Orders"). In the Pretrial Orders, the trial court found: "it was recently discovered the most recent order in this matter from July of 2018 was never signed by this Court." On 14 November 2023, the trial court entered an order allowing Paternal Grandmother's motion to intervene. By separate order entered 14 November 2023, the trial court granted Paternal Grandmother's motion to consolidate the Chapter 50 proceeding with the underlying juvenile proceedings (the "Order to Consolidate"). In the Order to Consolidate, the trial court made the

following finding concerning the 2018 Orders: "A mistrial was declared as to the Permanency Planning Hearing." The Pretrial Orders and the Motion to Consolidate were both signed by Chief District Court Judge Robert K. Martelle (the "Chief Judge").

That same day, the trial court conducted a permanency-planning hearing. Karen, who was sixteen-years-old at the time, testified that Respondent-Mother was "extremely unstable." Respondent-Mother was unable to keep steady employment and could not maintain her relationships. Respondent-Mother sold drugs from December 2020 until approximately December 2022. Beginning on Karen's thirteenth birthday, in November 2021, Respondent-Mother began providing Karen with alcohol, marijuana, and pills. Karen explained that while living with Respondent-Mother, Karen witnessed "consistent" incidents of domestic violence between Respondent-Mother and Father and also witnessed an individual overdose on fentanyl. Karen stated that she and Tim moved in with Paternal Grandmother after Respondent-Mother was evicted.

Since moving in with Paternal Grandmother, Karen stopped engaging in self-harming behaviors such as drinking alcohol and using drugs. Karen attributed this change to feeling safer with Paternal Grandmother. Additionally, Karen's school attendance and social life improved upon moving in with Paternal Grandmother. Specifically, Karen stated that "living with [Paternal Grandmother] actually feels like I can be a person and not someone who's just going from house to house trying to

find something to live off of. I've spent the last 16 years of my life not ever being in a house or a home to actually call home."

Joann Woods, the social worker assigned to the case, Paternal Grandmother, and Respondent-Mother also testified at the permanency-planning hearing. Woods recommended that the trial court award Paternal Grandmother guardianship of Karen and Tim. Respondent-Mother explained that after moving to Florida in March 2023, she obtained a job in July 2023 and worked the second shift from 3:00 p.m. to 11:00 p.m. Respondent-Mother testified that she was currently living in an "extended stay" hotel, but was on a waiting list for an apartment. When asked about her plans for childcare if the Juveniles were to live with her in Florida, Respondent-Mother answered: "They would be at home with my dog. She's a very good guard dog."

The trial court received and admitted the DSS and GAL reports and screenshots of texts between Respondent-Mother and Karen into evidence. The trial court entered the 2024 Orders, finding that Respondent-Mother acted inconsistently with her parental rights and was an unfit parent. The trial court temporarily suspended Respondent-Mother's visitation with Tim, but allowed visitation with Karen at Karen's discretion. On 7 February 2024, Respondent-Mother filed written notice of appeal.

## II. Jurisdiction

As an initial matter, we consider our jurisdiction to address Respondent-Mother's appeal. Respondent-Mother appeals from the 2024 Orders, arguing, in part,

that the trial court lacked subject-matter jurisdiction. Specifically, Respondent-Mother argues the 2018 Orders were valid, rendering the trial court without jurisdiction to enter the 2024 Orders in the absence of new abuse, neglect, or dependency petitions.

This Court has jurisdiction to review a permanency-planning order, "that changes legal custody of a juvenile." N.C. Gen. Stat. § 7B-1001(a)(4) (2023). We also have jurisdiction to consider, even for the first time on appeal, whether the trial court had subject-matter jurisdiction. *See In re K.U.*, 208 N.C. App. 128, 131, 702 S.E.2d 103, 105 (2010).

To the extent necessary, Respondent-Mother filed a petition for writ of certiorari ("PWC") requesting this Court permit appellate review. Because the 2024 Orders are appealable, *see* N.C. Gen. Stat. § 7B-1001(a)(4), and we are permitted to examine the record, including the trial court's previous orders, for the limited purpose of determining whether the trial court had jurisdiction, *see In re K.U.*, 208 N.C. App. at 131, 702 S.E.2d at 105, we dismiss Respondent-Mother's PWC as moot and proceed to the merits.

### III. Issues

The issues are whether the trial court: (1) lacked subject-matter jurisdiction; (2) failed to make, or did not adequately make, certain required findings; and (3) abused its discretion by temporarily suspending Respondent-Mother's visitation with Tim.

## IV. Analysis

Respondent-Mother primarily argues this Court should vacate the 2024 Orders because the trial court lacked subject-matter jurisdiction. In support of her argument, Respondent-Mother contends the 2018 Orders were valid and concluded the initial juvenile proceedings filed by DSS. She further asserts that, as a result, the trial court lacked subject-matter jurisdiction to conduct further proceedings and enter the 2024 Orders absent new petitions being brought by DSS. Respondent-Mother also argues the trial court failed to make, or did not adequately make, findings concerning whether: the Juveniles could be returned to Respondent-Mother within six months; Paternal Grandmother understood the legal significance of placement; and DSS made reasonable efforts to reunify the children with Respondent-Mother. Finally, Respondent-Mother contends the trial court abused its discretion by temporarily ceasing her visitation with Tim. We address each argument below.

### A. Subject-Matter Jurisdiction

First, Respondent-Mother argues the trial court lacked subject-matter jurisdiction to enter the 2024 Orders because the 2018 Orders effectively terminated the trial court's jurisdiction even though they were not signed by Judge Pool. Respondent-Mother further asserts the Chief Judge should have signed the 2018 Orders pursuant to Rule 63 of the North Carolina Rules of Civil Procedure instead of declaring a mistrial. *See* N.C. Gen. Stat. § 1A-1, Rule 63 (2023).

Whether a trial court has subject-matter jurisdiction is a question of law reviewable de novo on appeal. *In re K.U.*, 208 N.C. App. at 131, 702 S.E.2d at 105. " 'Under a *de novo* standard, [this Court] considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.' " *In re E.M.*, 263 N.C. App. 476, 479, 823 S.E.2d 674, 676 (2019) (quoting *In re G.C.*, 230 N.C. App. 511, 516, 750 S.E.2d 548, 551 (2013)).

"The [trial] court has exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent." N.C. Gen. Stat. § 7B-200(a) (2023). "A trial court's subject-matter jurisdiction over all stages of a juvenile case is established when the action is initiated with the filing of a properly verified petition." *In re T.R.P.*, 360 N.C. 588, 593, 636 S.E.2d 787, 792 (2006). Further, "[i]n any case where the court finds the juvenile to be abused, neglected, or dependent, the jurisdiction of the court to modify an order or disposition made in the case shall continue during the minority of the juvenile, until terminated by order of the court, or until the juvenile is otherwise emancipated." N.C. Gen. Stat. § 7B-1000(b) (2023).

"[A] judgment is entered when it is reduced to writing, *signed by the judge*, and filed with the clerk of court pursuant to Rule 5." N.C. Gen. Stat. § 1A-1, Rule 58 (2023) (emphasis added). But if "a judge before whom . . . a hearing has been held is unable to perform the duties to be performed by the court" due to "death, sickness or other disability[,]" Rule 63 of the North Carolina Rules of Civil Procedure provides that in actions in the district court, the chief district court judge may perform the

- 9 -

disabled judge's duties. N.C. Gen. Stat. § 1A-1, Rule 63. If, however, "the substituted judge is satisfied that he or she cannot perform those duties because the judge did not preside at the trial or hearing or for any other reason, the judge may, in the judge's discretion, grant a new trial or hearing." *Id.*

In considering whether it was proper for the Chief Judge to decline to sign the 2018 Orders on behalf of the disabled judge, we apply an abuse of discretion standard of review. The permissive language of Rule 63 indicates it is the Chief Judge's prerogative whether he or she, as the substitute judge, will perform the duties of the disabled judge or "choose to grant a new trial or hearing for the parties." *Lange v. Lange*, 357 N.C. 645, 648, 588 S.E.2d 877, 879 (2003); *see* N.C. Gen. Stat. § 1A-1, Rule 63 (providing that "the judge may, *in the judge's discretion*, grant a new trial or hearing") (emphasis added). Stated differently, the decision of whether to grant a new hearing or sign an order "for which findings of fact and conclusions had been made by the unavailable judge" is an act of discretion. *In re K.N.*, 381 N.C. 823, 829–30, 874 S.E.2d 594, 599 (2022). Thus, our review is limited to whether the trial court's ruling is "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re Z.A.M.*, 374 N.C. 88, 100, 839 S.E.2d 792, 800 (2020) (internal quotation marks and citation omitted).

This differs from how we evaluate issues concerning a judge's compliance with Rule 63. When analyzing whether a substitute judge acted without or beyond the scope of his authority provided by Rule 63, we conduct a de novo standard of review

as the interpretation of our Rules of Civil Procedure "is a matter of statutory interpretation[,]" which "is ultimately a question of law for the courts." *In re K.N.*, 381 N.C. at 827, 874 S.E.2d at 598.

For example, in *In re K.N.*, we determined that the substitute judge violated Rules 52 and 63 by "making findings of fact and conclusions of law despite not personally hearing the evidence . . . ." 381 N.C. at 830, 874 S.E.2d at 599. The father had appealed the trial court's order terminating his parental rights, and our Supreme Court vacated the order and remanded the case. *Id.* at 824, 874 S.E.2d at 596. In the meantime, the presiding district court judge passed away, and the matter was assigned to the substitute judge. *Id.* at 825, 874 S.E.2d at 596–97. Without conducting a new hearing, the substitute judge issued a new order finding that the juvenile was neglected and terminating the father's parental rights. *Id.* at 825, 874 S.E.2d at 597. Applying a de novo standard of review, we concluded the substitute judge exceeded his authority and declared the order to be a "nullity." *Id.* at 829, 874 S.E.2d at 599. Unlike *In re K.N.*, where the trial court improperly applied Rule 63, the issue here is whether the Chief Judge erred by conducting a new hearing instead of invoking Rule 63 to sign the 2018 Orders prepared by Judge Pool.

Here, the 2018 Orders were reduced to writing and file-stamped. Nevertheless, the 2018 Orders clearly lack a required element under Rule 58—signature of the trial court judge. *See* N.C. Gen. Stat. § 1A-1, Rule 58. Thus, the 2018 Orders were never properly "entered" and are not valid. *See id.* Considering Paternal Grandmother's

- 11 -

complaint, which included new, concerning allegations, and the age of the 2018 Orders—nearly five years old—we cannot say the Chief Judge's decision to grant a new hearing instead of signing the 2018 Orders was an abuse of discretion. Accordingly, new Chapter 7B petitions were not required and the trial court retained continuing jurisdiction from the initial juvenile proceedings. *See* N.C. Gen. Stat. § 7B-1000(b). Thus, the trial court had subject-matter jurisdiction.

**B. Challenged Findings**

Next, Respondent-Mother argues the trial court either failed to make, or did not adequately make, findings concerning whether: the Juveniles could be returned to Respondent-Mother within six months; Paternal Grandmother understood the legal significance of placement; and DSS made reasonable efforts to reunify the children with Respondent-Mother.

This Court reviews a permanency-planning order to determine "whether there is competent evidence in the record to support the findings and the findings support the conclusions of law." *In re J.C.S.*, 164 N.C. App. 96, 106, 595 S.E.2d 155, 161 (2004). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *In re J.M.*, 384 N.C. 584, 591, 887 S.E.2d 823, 828 (2023) (citations and internal quotation marks omitted). The trial court's findings of fact are conclusive on appeal if they are supported by competent evidence. *See In re Isenhour*, 101 N.C. App. 550, 553, 400 S.E.2d 71, 73 (1991). "Unchallenged findings of fact are 'deemed to be supported by the evidence and are binding on appeal.'" *In re*

*N.L.M.*, 283 N.C. App. 356, 360, 873 S.E.2d 640, 643 (2022) (quoting *In re J.C.M.J.C.*, 268 N.C. App. 47, 51, 834 S.E.2d 670, 673–74 (2019)).  The issue of whether the trial court's findings of fact support its conclusions of law is reviewed de novo.  *In re A.S.*, 275 N.C. App. 506, 509, 853 S.E.2d 908, 911 (2020).  " 'Under a *de novo* standard, [this Court] considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.' "  *In re E.M.*, 263 N.C. App. at 479, 823 S.E.2d at 676 (quoting *In re G.C.*, 230 N.C. App. at 516, 750 S.E.2d at 551).

### 1.  Impossibility of Returning Home

Respondent-Mother argues the trial court erred by failing to make sufficient findings addressing whether the Juveniles could be placed with Respondent-Mother within the next six months.

At any permanency-planning hearing where the juvenile is not placed with a parent, the trial court is required to consider "whether it is possible for the juvenile to be placed with a parent within the next six months and, if not why such placement is not in the juvenile's best interest."  N.C. Gen. Stat. § 7B-906.1 (e)(1) (2023).  Where relevant, the trial court's findings must adequately explain whether the juvenile can be returned home within the next six months and, if not, why it would be against the best interests of the juvenile.  *See In re J.H.*, 244 N.C. App. 255, 273, 780 S.E.2d 228, 241, (2015) (quoting *In re I.K.*, 227 N.C. App. 264, 275, 742 S.E.2d 588, 595–96 (2013)).  The trial court is "not required to make every finding listed" but it must "make those findings that are relevant to the permanency plans being developed for the children."

*In re J.S.*, 165 N.C. App. 509, 512, 589 S.E.2d 658, 660–61 (2004). Ultimately, the trial court "must make clear that [it] considered the evidence in light of . . . [the criteria]. The trial court's written findings must address the statute's concerns, but need not quote its exact language." *In re S.B.*, 268 N.C. App. 78, 81, 834 S.E.2d 683, 686 (2019).

Here, the trial court's unchallenged findings adequately explain why the Juveniles could not be returned home within the next six months. *See* N.C. Gen. Stat. § 7B-906.1(e)(1); *In re J.H.*, 244 N.C. App. at 273, 780 S.E.2d at 241. Specifically, findings of fact 13 through 18 demonstrate that the trial court considered whether it was possible for the Juveniles to return home. These findings also adequately address the impossibility of the Juveniles' return home, although they do not quote the exact statutory language. *See In re S.B.*, 268 N.C. App. at 81, 834 S.E.2d at 686. The trial court found that Respondent-Mother previously sold drugs, had an unstable living environment, and supplied Karen with drugs and alcohol, thereby creating a substance abuse issue for Karen. The trial court further found that the family routinely lost power in their home and had little food available. Finally, the findings explained that Tim experienced night terrors while living with Respondent-Mother and Karen witnessed an individual overdose. The trial court, therefore, made adequate findings demonstrating that the Juveniles could not be returned to Respondent-Mother within six months. *See* N.C. Gen. Stat. § 7B-906.1(e)(1); *In re J.H.*, 244 N.C. App. at 273, 780 S.E.2d at 241.

### 2. Significance of Guardianship

Respondent-Mother argues the trial court erred because it failed to specifically find that Paternal Grandmother understood the legal significance of guardianship.

When the trial court awards custody of a juvenile to a nonparent, the court is required to "*verify* that the person receiving custody or being appointed as guardian of the juvenile understands the legal significance of the placement or appointment and will have adequate resources to care appropriately for the juvenile." N.C. Gen. Stat. § 7B-906.1(j) (emphasis added). "The fact that the prospective custodian or guardian has provided a stable placement for the juvenile for at least six consecutive months is evidence that the person has adequate resources." *Id.* Further, "[i]t is sufficient that the court receives and considers evidence that the guardian[] understand[s] the legal significance of the guardianship." *In re J.M.*, 271 N.C. App. at 195, 843 S.E.2d at 675 (quoting *In re L.M.*, 238 N.C. App. 345, 347, 767 S.E.2d 430, 432 (2014)).

Here, the trial court made findings demonstrating it verified that Paternal Grandmother understood the legal significance of placement and had adequate resources to care for the Juveniles. *See* N.C. Gen. Stat. § 7B-906.1(j); *see also In re J.M.*, 271 N.C. App. at 195, 843 S.E.2d at 675. Finding of fact 22 states that Paternal Grandmother "is functioning in the role of the prudent parent and making decisions in regards to the [Juveniles'] daily life and activities." Finding of fact 24 states that Paternal Grandmother "is able to care for the [Juveniles] financially" and "is willing

to be the custodian for the [Juveniles]." Further, the evidence supports Paternal Grandmother's capacity to provide for the Juveniles because they were in her custody for at least six months. *See* N.C. Gen. Stat. § 7B-906.1(j). Additionally, the social worker testified that Paternal Grandmother understood the significance of the guardianship and custody of the Juveniles. *See In re J.M.*, 271 N.C. App. at 195, 843 S.E.2d at 675. Therefore, the trial court verified that Paternal Grandmother understood the legal significance of placement and had adequate resources to provide for the Juveniles.

### 3. Reunification Efforts

Respondent-Mother argues the trial court's finding that DSS made reasonable efforts to reunify the Juveniles with Respondent-Mother is not supported by the evidence.

"Trial courts are required to make written findings of fact as to whether the department of social services made reasonable efforts towards reunification at permanency planning hearings." *In re A.A.S.*, 258 N.C. App. 422, 430, 812 S.E.2d 875, 882 (2018) (citing N.C. Gen. Stat. § 7B-906.2 (2015)). "[R]easonable efforts" are "[t]he diligent use of preventive or reunification services by a department of social services when a juvenile's remaining at home or returning home is consistent with achieving a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-101(18) (2023). "Our General Assembly requires social service agencies to undertake reasonable, not exhaustive, efforts towards reunification[,]"

and these efforts may include: (1) implementing case plans, (2) providing transportation for parents, (3) supervising visits between respondent parents and their children, and (4) arranging drug screens. *In re A.A.S.*, 258 N.C. App. at 430, 812 S.E.2d at 882.

Here, the trial court found that DSS "has provided supportive services and has made reasonable efforts to prevent the need of having custody of [the Juveniles], said services include: Transportation, Child and Family Team Meetings, Referrals for services, Supervised visits, attempted random drug screens . . . and other services that are described in the attached court summary." This finding is supported by the evidence. DSS made efforts to reunify the Juveniles with Respondent-Mother following Paternal Grandmother's motion to intervene. DSS scheduled a "Child and Family Team Meeting" for 23 August 2023, but was unable to reach Respondent-Mother. DSS conducted a "Child and Family Team Meeting" on 18 September 2023 at which Respondent-Mother agreed to complete a mental health and substance abuse assessment, submit to random drug testing, and complete parenting classes. Respondent-Mother did not complete any of the services to address her substance abuse issues—the basis for the initial adjudication and neglect proceedings. Thus, the trial court's finding that DSS made reasonable efforts to reunify the Juveniles with Respondent-Mother is supported by the evidence.

**C. Visitation**

Finally, Respondent-Mother argues the trial court abused its discretion by suspending her visitation with Tim without making adequate findings. We disagree.

This Court reviews an order suspending visitation for abuse of discretion. *In re C.M.*, 183 N.C. App. 207, 215, 644 S.E.2d 588, 595 (2007). When this Court reviews for abuse of discretion, " 'we defer to the trial court's decision unless it is manifestly unsupported by reason or [is] so arbitrary that it could not have been the result of a reasoned decision.' " *In re A.J.L.H.*, 386 N.C. 305, 312, 902 S.E.2d 251, 256 (2024) (quoting *In re K.N.L.P.*, 380 N.C. 756, 759, 869 S.E.2d 643, 646 (2022)).

"An order . . . that continues the juvenile's placement outside the home shall provide for visitation that is in the best interests of the juvenile consistent with the juvenile's health and safety, including no visitation." N.C. Gen. Stat. § 7B-905.1(a) (2023); *see In re J.C.*, 283 N.C. App. 486, 490–91, 873 S.E.2d 757, 761 (2022). If the trial court determines, in its discretion, that suspending visitation is in the best interest of the juvenile, the trial court is required to address the issue in its dispositional order and " 'specifically determine that [visitation] would be inappropriate in light of the specific facts under consideration.' " *In re J.L.*, 264 N.C. App. 408, 421–22, 826 S.E.2d 258, 268 (2019) (quoting *In re K.C.*, 199 N.C. App. 557, 562, 681 S.E.2d 559, 563 (2009)).

Here, in light of the ample competent evidence in the record supporting the trial court's decision to cease reunification efforts, we conclude that the trial court's decision that "there shall be no contact or no visitation with [Respondent-Mother] and

- 18 -

[Tim] at this time[,] [and] [t]hat visitation shall be reviewed at the next court date to determine progress of [Tim]'s therapy" was not manifestly unsupported by reason nor so arbitrary that it could not have been the result of a reasoned decision. *See In re C.M.*, 183 N.C. App. at 215, 644 S.E.2d at 595. Accordingly, the trial court did not abuse its discretion by suspending visitation.

## V. Conclusion

The trial court had subject-matter jurisdiction and its findings of fact were adequate and supported by the evidence. Finally, the trial court did not abuse its discretion by suspending Respondent-Mother's visitation with Tim. Accordingly, we affirm the 2024 Orders.

AFFIRMED.

Chief Judge DILLON and Judge COLLINS concur.

Report per Rule 30(e).